FILED

2014 Sep-04  PM 04:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| JEREMY TRAVON MALONE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COMMISSIONER RICHARD ALLEN; | ) | Case No.:  5:11-cv-03256-RBP-SGC |
| ATTORNEY GENERAL OF THE STATE | ) | |
| OF ALABAMA, | ) | |
| | ) | |
| Respondents. | ) | |

### MEMORANDUM OPINION

Petitioner, Jeremy Travon Malone ("Malone"), has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Doc. 1).  Malone challenges the validity of his 2009 conviction in the Circuit Court of Madison County, Alabama after a plea of guilty to trafficking in marijuana.  (*Id.*).  The State has responded to the petition (Doc. 4) and Malone has replied, (Doc. 6).  For the reasons set forth herein, the petition is due to be denied in its entirety.

### Facts

On June 27, 2007, the Grand Jury for the Northern District of Alabama returned an indictment charging Malone with conspiring to distribute and possess with the intent to distribute fifty or more grams of crack cocaine.  (Doc. 4-3 at 27); *see also USA v. Blackburn, et al.*, 5:07-cr-00250-RDP-JEO.  A warrant was issued for Malone's arrest, and federal authorities contacted local law enforcement in Huntsville, Alabama to notify them of the arrest warrant.  (Doc. 4-3 at 27).  On July 3, 2007, agents identified as members of the Huntsville/Madison County Strategic Counterdrug Team arrested Malone in the parking lot of the apartment complex where he was residing.  (*Id.*).  Agents then searched Malone's vehicle.  (*Id.*).  According to a case information

completed by an agent of the Strategic Counterdrug Team, a .32 caliber pistol was located under the front seat of the vehicle and a bag containing marijuana residue was located on the floor of the backseat of the vehicle.  (*Id.*)[1]  Based on the discovery of the pistol and bag, a warrant was obtained for the search of Malone's residence.  (*Id.* at 27).[2]  Agents seized six one-pound bags of marijuana, plus another bag partially filled with marijuana, a loaded Ruger 9 mm pistol, and more than $1,500.00 in cash from Malone's residence.  (*Id.*).

On November 30, 2007, the Grand Jury for Madison County, Alabama returned an indictment charging Malone with trafficking in marijuana, theft of a motor vehicle, escape, carrying a pistol without a permit, and resisting arrest.  (*Id.* at 11); *see also State of Alabama v. Malone*, CC-2007-007168.00.  On January 15, 2008, Malone was convicted in the United States District Court for the Northern District of Alabama of conspiring to distribute and possess with the intent to distribute fifty or more grams of cocaine base.  (Doc. 4-4 at 3); *see also USA v. Blackburn, et al.*, 5:07-cr-00250-RDP-JEO.  He subsequently was sentenced to 120 months imprisonment in connection with his federal conviction.  (*Id.*).[3]  The state charges against Malone were set for trial on January 26, 2009.  (Doc. 4-4, p. 3).  A motion to suppress evidence in the state case was set for hearing the same day.  (*Id.* at 4).  Instead, on January 26, 2009, Malone pled guilty, pursuant to a plea agreement, to trafficking in marijuana in the Circuit Court

---

[1] The affidavit supporting a warrant subsequently obtained for the search of Malone's residence stated the pistol was located under the driver's side seat of Malone's vehicle but did not specify where in the vehicle the bag was located.  (*Id.* at 29).  Malone claims the bag did not contain marijuana residue and was located in the trunk of his vehicle.  (*Id.* at 12).

[2] While the search warrant was being obtained, Malone, who was handcuffed in the back seat of a patrol car, managed to flee in the car.  (*Id.*).  Eventually, he abandoned the car and fled on foot.  (*Id.*).  Malone was apprehended by a police dog.  (*Id.* at 28).

[3] Malone appealed his conviction, which was affirmed by the United States Court of Appeals for the Eleventh Circuit.  *United States of America v. Blackburn, et al.*, Appeal No. 08-12446.  Malone then filed a motion to vacate his conviction and sentence in this court pursuant to 28 U.S.C. § 2255.  *Malone v. United States of America*, 5:10-cv-08020-RDP-JEO.  That motion was denied.  *Id.*  Malone then moved for reconsideration, and his motion was denied by this court.  *Id.*  Finally, Malone moved the Eleventh Circuit for a certificate of appealability so he could appeal the denial of his § 2255 motion.  *Malone v. United States of America*, Appeal No. 13-14098-B.  The Eleventh Circuit denied Malone a certificate of appealability.  *Id.*

of Madison County.  (Doc. 1 at 1).  He was sentenced to ten years imprisonment, with such sentence to run concurrent with the federal sentence he was already serving.  (*Id.*); *see also State of Alabama v. Malone*, CC-2007-007168.00.[4]

### Collateral Review by State Courts

Malone did not directly appeal from the judgment of conviction in the Circuit Court of Madison County.  (Doc. 1 at 1).  On March 3, 2010, Malone filed a Rule 32 petition in that court by placing a copy of the same in the prison mail.  (Doc. 4-3 at 7).  Malone sought relief from his state conviction on the grounds the assistance rendered by his trial counsel was constitutionally defective.  (*Id.* at 8).  Specifically, Malone alleged his trial counsel failed to litigate the motion to suppress.  (*Id.*).  According to Malone, the bag allegedly containing marijuana residue was found in the trunk of his car, the warrantless search of which violated the Fourth Amendment.  (*Id.* at 14-15).  In the alternative, Malone argued even if the bag was located on the rear floorboard of his car, the search of his car without a warrant was unlawful under *Arizona v. Gant*, 129 U.S. 1710 (2009).  (*Id.* at 15-18).  Finally, Malone contended the affidavit supporting the search warrant for his residence contained false statements—namely, that the aforementioned bag contained marijuana residue and that the basis for the federal arrest warrant was Malone's "trafficking cocaine and marijuana," when the warrant did not mention marijuana.  (*Id.* at 19-20).  Malone also claimed the affidavit omitted the location where the bag allegedly containing marijuana residue was found and the affiant's prior involvement in a federal investigation of Malone.  (*Id.* at 21-22).  According to Malone, these false statements and omissions invalidated the affidavit under *Franks v. Delaware*, 438 U.S. 154, 164-65 (1978).  Malone requested an evidentiary hearing.  (*Id.* at 22-23).

---

[4] The order entered by the Circuit Court of Madison County reflecting Malone's state sentence is to run concurrent with the federal sentence at least nominally establishes Malone is in custody pursuant to the challenged state conviction, a condition precedent to § 2254 relief.

The State responded, claiming Malone was afforded the opportunity "to exhaustively consider and weigh the relative merits of accepting the plea versus proceeding to hearing [on the motion to suppress] and trial" and entered a plea of guilty knowingly, intelligently, and voluntarily. (Doc. 4-4 at 1). Attached to the State's response was an affidavit sworn to by Malone's trial attorney. (*Id.* at 3-4). Malone replied to the State's response to his Rule 32 petition. (Doc. 4-5). In his reply, Malone noted his trial counsel advised him the motion to suppress lacked merit based on a recent Supreme Court case—*Herring v. United States*, 129 S. Ct. 695 (2009)—and the discovery of the federal arrest warrant. (*Id.* at 3).[5]

The Circuit Court of Madison County denied Malone's Rule 32 petition on the merits by an order dated August 26, 2010. (Doc. 4-6).[6] In April of 2011, Malone appealed the denial of his Rule 32 petition to the Alabama Court of Criminal Appeals, identifying the issues for review as whether the circuit court erred in (1) denying his petition "in spite of a colorable claim of ineffective assistance of counsel" and (2) failing to hold an evidentiary hearing. (Doc. 4-10 at 6). As to the first issue, Malone alleged his trial attorney erroneously advised him the warrantless search of his vehicle was legal and the motion to suppress lacked merit based on discovery of the federal arrest warrant. (*Id.* at 7).

---

[5] It appears a basis of the motion to suppress was Malone was arrested without a warrant. *See State of Alabama v. Malone*, CC-2007-007168.00. Although the motion to suppress was not made part of the record submitted to this court, we may take judicial notice of the state court proceedings. *See Moore v. Estelle*, 526 F.2d 690, 693 (1976) ("In considering this habeas corpus appeal we take judicial notice of prior habeas proceedings brought by this appellant in connection with the same conviction. This includes state petitions, even when the prior state case is not made a part of the record on appeal. For a proper understanding of protracted litigation we may draw upon the records in all the preceding cases." (internal citations omitted)); *see also Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent in the Eleventh Circuit all decisions of the former Fifth Circuit announced prior to October 1, 1981).

[6] On February 9, 2011, Malone filed a second Rule 32 petition by placing a copy of the same in the prison mail. (Doc. 1 at 3); *see also State of Alabama v. Malone*, CC-2007-007168.61. Malone sought to appeal, out of time, the denial of his first Rule 32 petition. (*Id.*) As grounds, Malone claimed a copy of the order dated August 26, 2010 denying his first Rule 32 petition was not mailed to him until January 14, 2011 or received by him until January 21, 2011, at which point his time to appeal had expired. *State of Alabama v. Malone*, CC-2007-007168.61. The Circuit Court of Madison County granted Malone's second Rule 32 petition by an order dated March 11, 2011. (*Id.*).

4

On August 19, 2011, the Alabama Court of Criminal Appeals affirmed the decision of the circuit court.  (Doc. 4-7).  The appellate court noted the circuit court's finding that trial counsel represented Malone effectively was supported by trial counsel's affidavit and, thus, held the circuit court had not abused its discretion by denying Malone's Rule 32 petition.  (*Id.* at 6).  The appellate court also held Malone's argument that the circuit court erred in failing to conduct an evidentiary hearing was without merit.  (*Id.*).  Malone did not file an application for rehearing or a petition for certiorari.  (Doc. 1 at 3).  Therefore, the Alabama Court of Criminal Appeals entered a Certificate of Judgment on September 7, 2011.  (Doc. 4-8).

## Federal Habeas Petition

On September 6, 2011, Malone executed the instant § 2254 petition, which was deemed filed on September 9, 2011.  (Doc. 1 at 6).  Malone asserts three grounds for federal habeas relief: (1) the Circuit Court of Madison County improperly denied his Rule 32 petition without an evidentiary hearing, relying instead on his trial counsel's affidavit, which "failed to specifically address [his] claim of erroneous advice," (2) the state court failed to hold a full and fair hearing on his ineffective assistance claim by "accept[ing] [his trial] counsel's general statement as facts," and (3) his trial counsel "advised [him] to plead guilty pursuant to the plea agreement after erroneously advising [him] that [his] motion to suppress lacked merit because a physical copy of the federal arrest warrant was discovered."  (*Id.* at 4-5).

On April 12, 2012, the State filed a response to Malone's § 2254 petition.  (Doc. 4).  The State claims the first two grounds for relief asserted by Malone[7] are not cognizable under § 2254.[8]  (*Id.* at 5-6).  As to the third ground for relief alleged by Malone, the State claims Malone

---

[7] The State notes it is unclear whether the second ground for relief is different from the first.  (*Id.* at 6).
[8] In the alternative, the State argues such claims are procedurally defaulted because Malone presented them to the Alabama Court of Criminal Appeals but did not file an application for rehearing after that court denied them or petition for certiorari review by the Alabama Supreme Court.  (*Id.*).

failed to exhaust his state court remedies because he did not present this claim to the Alabama Court of Criminal Appeals. (*Id.* at 7). According to the State, the ineffective assistance claim presented in Malone's Rule 32 petition was based on his trial counsel's alleged failure to litigate the motion to suppress. And while his reply mentioned his trial counsel's alleged erroneous legal advice regarding the effect of discovery of the federal arrest warrant, such advice was not an independent basis for his ineffective assistance claim. (*Id.* at 7-8). The State also contends Malone only mentioned his trial counsel's alleged erroneous legal advice regarding discovery of the federal arrest warrant on appeal arguing the Circuit Court of Madison County had erred in denying him an evidentiary hearing. (*Id.* at 8). According to the State, neither the circuit nor the appellate court addressed or ruled on Malone's ineffective assistance claim based on his trial counsel's alleged erroneous legal advice regarding discovery of the federal arrest warrant. (*Id.* at 8-9). In the alternative, the State argues even if such claim was fairly presented to the Alabama Court of Criminal Appeals, like Malone's other two alleged grounds for relief, it is procedurally defaulted because Malone failed to file an application for rehearing or petition for certiorari review. (*Id.* at 10).

In his reply, filed on or about May 10, 2012, Malone "concedes that his claims are unexhausted and procedurally defaulted." (Doc. 6 at 2). However, he claims this court may, nonetheless, hear his § 2254 petition and grant habeas relief because he can establish cause for the default and actual prejudice resulting from the alleged violation of federal law. (*Id.*).

## Discussion

## Claims 1 & 2

As the State notes, it is unclear how Malone's second alleged ground for relief is different from his first. In any event, both grounds allege one or more errors in the process Malone was

6

afforded during the state collateral proceeding attacking his state conviction. "[W]hile habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief." *Quince v. Crosby*, 360 F.3d 1259, 1261-62 (11th Cir. 2004); *see also Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987). Therefore, these claims are not cognizable in federal habeas corpus.[9]

**Claim 3—Ineffective Assistance**

### Malone's Ineffective Assistance Claim Is Barred by § 2254(b)(1) and the Doctrine of Procedural Default

As Malone concedes, the third ground for relief alleged in his § 2254 petition is procedurally defaulted.[10] Generally, a state prisoner cannot petition for federal habeas relief without first exhausting his state court remedies for challenging his conviction. § 2254(b)(1);

---

[9] Malone admits his "first two grounds are non-cognizable under Section 2254," although apparently because he claims they are encompassed within his third alleged ground for relief. (Doc. 6 at 5).

[10] The State's contention the ineffective assistance claim Malone presents in his § 2254 petition differs from that presented in his Rule 32 petition is unconvincing. In his Rule 32 petition, Malone alleged he was denied effective assistance of counsel because his trial counsel either failed to raise meritorious arguments in the motion to suppress or failed to adequately present them. (Doc. 4-3). In his affidavit attached to his Rule 32 petition, Malone noted his trial counsel's advice the discovery of the federal arrest warrant mooted the motion to suppress. (*Id.* at 26). In his reply to the State's response to his Rule 32 petition, Malone again referenced this advice. (Doc. 4-5 at 3). Finally, Malone noted the advice in support of his appeal of the denial of his Rule 32 petition on the merits. (Doc. 4-10 at 7). The Alabama Court of Criminal Appeals characterized Malone's Rule 32 petition as alleging Malone "was denied effective assistance of trial counsel because counsel advised him to plead guilty instead of attempting to suppress the evidence seized after the search of his residence." (Doc. 4-7 at 2). Before affirming the decision of the Circuit Court of Madison County, the appellate court noted Malone had "reassert[ed] the claim raised in his petition to the circuit court." (*Id.*). Malone's allegation regarding his trial counsel's advice as to the effect of discovery of the federal arrest warrant on the motion to suppress goes to the broader allegation his trial counsel failed to adequately litigate the motion to suppress and, instead, advised him to accept the plea agreement. Furthermore, while the State claims on appeal "Malone did not claim that the circuit court should have granted his claim of ineffective assistance of counsel but only that the circuit court erred under state law in denying him a hearing," (Doc. 4 at 7-9), it is clear the Alabama Court of Criminal Appeals construed Malone's appeal as seeking review of the denial of his Rule 32 petition, itself, and of the decision to deny it without an evidentiary hearing. (*See* Doc. 4-7 at 2 ("On appeal, Malone reasserts the claim raised in his petition to the circuit court *and also* contends the circuit court erred in refusing to conduct an evidentiary hearing." (emphasis added))). Therefore, we cannot say Malone did not "fairly present" the ineffective assistance claim stated in his § 2254 petition to the Circuit Court of Madison County or, on appeal, to the Alabama Court of Criminal Appeals. *See also Scott v. Culliver*, 342 Fed. Appx. 525, 529 (11th Cir. 2009) ("[A] habeas petitioner is deemed to have exhausted his state remedies by raising an issue to the state court, even if the state court fails to address the issue in its opinion.") (citing *Smith v. Digmon*, 434 U.S. 332, 333 (1978)). However, Malone, nonetheless, has failed to exhaust his ineffective assistance claim in the state courts—not because he did not present it to the Circuit Court of Madison County or the Alabama Court of Criminal Appeals, but because he did not apply for a rehearing of the claim before the latter or seek certiorari review by the Supreme Court of Alabama.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  To have exhausted his state court remedies, a state prisoner must have "fairly presented" the same claim he asserts before a federal habeas court to the state courts, *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005), "by invoking one complete round of the State's established appellate review process."  *Boerckel*, 526 U.S. at 845.  In Alabama, the appellate review process includes an application for rehearing before the Alabama Court of Criminal Appeals and a petition for certiorari review by the Alabama Supreme Court.  *See* Ala. R. App. P. 39(c)(1) – (2), 40(c); *Pruitt v. Jones*, 348 F.3d 1355 (11th Cir. 2003) (*Boerckel* rule requiring prisoner to file petition for discretionary review in state's highest court applies to state collateral review process).  An application for rehearing must be filed within fourteen days of the date of issuance of the decision in question.  Ala. R. App. P. 40(c).  The application is a prerequisite to certiorari review by the Alabama Supreme Court.  Ala. R. App. P. 39(c)(1).  A petition for a writ of certiorari must be filed within fourteen days of the decision of the Alabama Court of Criminal Appeals on the application for rehearing. Ala. R. App. P. 39(c)(2).

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine."  *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).  Where a state prisoner has failed to exhaust his state court remedies and those remedies are no longer available, his federal claim is procedurally defaulted, barring a federal court from granting habeas relief.  *Id.* There are two exceptions: Federal habeas review of a procedurally defaulted claim is permissible where a state prisoner can demonstrate cause for the default and actual prejudice resulting from the alleged violation of federal law, or failure to consider the claim will result in a fundamental miscarriage of justice.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

8

Because Malone neither filed an application for rehearing before the Alabama Court of Criminal Appeals nor petitioned the Alabama Supreme Court for certiorari review, he has failed to exhaust his remedies in the state courts. These remedies are now foreclosed to him because the time for filing an application for rehearing, which is a prerequisite to certiorari review by the Alabama Supreme Court, has long passed. *See* Ala. R. App. P. 39(c)(1), 40(c). Therefore, Malone's ineffective assistance claim is procedurally defaulted. While Malone concedes as much, he argues he can establish cause for the default and actual prejudice resulting from the alleged violation of federal law, such that this court may hear his § 2254 petition and grant him habeas relief.[11]

### Malone Cannot Establish Cause to Excuse the Default or Prejudice Resulting From the Alleged Violation of Federal Law

"To show cause, the petitioner must demonstrate 'some objective factor external to the defense' that impeded his effort to raise the claim properly in state court." *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). The cause alleged "must be something external to the petitioner, something that cannot fairly be attributed to him . . . ." *Coleman*, 501 U.S. at 753. "An external impediment includes interference by state officials that prevented a petitioner from raising a claim." *Ward*, 592 F.3d at 1176 (internal quotations omitted).

In his petition presented to this court, Malone claims he did not file an application for rehearing of his appeal to the Alabama Court of Criminal Appeals because "[d]ue to institutional errors, [he] failed to receive the appellate court's decision in a timely manner." (Doc. 1 at 3). In his reply to the State's response to his § 2254 petition, Malone claims both compliance with Rule 40(c) was impracticable because of his delayed receipt of the appellate court's decision, and the

---

[11] Malone does not contend failure to consider his ineffective assistance claim will result in a fundamental miscarriage of justice. (*See* Doc. 6).

time to file an application for rehearing had expired by the time he received the decision.  (Doc. 6 at 3).

Malone claims he received a copy of the memorandum opinion affirming the denial of his Rule 32 petition on September 2nd.  (*Id.*).  Pursuant to Rule 40(c) of the Alabama Rules of Appellate Procedure, September 2nd was the last day Malone could file a timely application for rehearing in the Alabama Court of Criminal Appeals.[12]  Therefore, contrary to Malone's assertion, the time to file an application for rehearing had not yet expired when he received a copy of the memorandum opinion affirming the denial of his Rule 32 petition.  Had Malone deposited an application for rehearing in the internal mail system of the institution where he was incarcerated on September 2nd, it would have been timely.  This is because the State of Alabama expressly incorporated the "mail box" rule enunciated in *Houston v. Lack*, 487 U.S. 266 (1988) into its procedural rules.  *See* Ala. R. App. P. 4(c).  The "mail box" rule generally provides a pleading is deemed filed by an inmate when given to prison authorities for mailing, regardless of when the court receives it.  *Id.*; *Parris v. Prison Health Servs., Inc.*, 68 So. 3d 108, 110 (Ala. Civ. App. 2009).  "Alabama courts apply the mailbox rule to pro se prisoner post-conviction filings." *Chavis v. Wise*, 2013 WL 3287104, at *18 (M.D. Ala. June 28, 2013) (citing *Ex parte Allen*, 825 So. 2d 271, 272 (Ala. 2002); *Holland v. State*, 621 So. 2d 373, 375 (Ala. Crim. App. 1993), *opinion extended after remand*, 654 So. 2d 77 (Ala. Crim. App. 1994)).

Alternatively, on or even after September 2nd, Malone could have requested a suspension of Rule 40(c)'s fourteen-day period for filing an application for rehearing.  *See* Ala. R. App. P. 2(b).  In fact, Malone is no stranger to such tactics.  He successfully petitioned the Circuit Court of Madison County for an out-of-time appeal of his first Rule 32 petition after the order dated

---

[12] The time for filing the application for rehearing excludes the first day of the period and includes the last.  *See* Ala. R. App. P. 26(a).

August 26, 2010 denying that petition was not mailed to him until January of 2011.  For these reasons, Malone cannot establish cause to excuse the default of his ineffective assistance claim.

Nor can he establish prejudice resulting from the alleged violation of federal law.  Prejudice requires a defendant to "show[], not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *U.S. v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).  The defendant "must show that there is at least a reasonable probability that the result of the proceeding would have been different [absent the errors]."  *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).  Malone claims he "experience (sic) actual prejudice because the delay and resulting procedural default led to his inability to litigate his claim that counsel provided ineffective assistance on rehearing or before the Alabama Supreme Court."  (Doc. 6 at 4).  Again, Malone could have given an application for rehearing to prison authorities on September 2nd, and it would have been timely.   Alternatively, on or after September 2nd, he could have requested a suspension of that portion of Rule 40(c) establishing his deadline for filing an application for rehearing.   Therefore, the basis of his prejudice argument is flawed.[13]

In sum, Malone has failed to establish cause for the default of his ineffective assistance claim or prejudice resulting from the alleged violation of federal law.  Failure to establish either

---

[13] Malone's cites the decision of the United States Court of Appeal's for the Sixth Circuit in *Maples v. Stegall*, 340 F.3d 433 (6th Cir. 2003) in support of his cause-and-prejudice argument.  That decision, which is not binding precedent in this circuit, *see Generali v. D'Amico*, 766 F.2d 485, 489 (11th Cir. 1985), is distinguishable.  In *Maples*, the petitioner completed his application for leave to appeal five days prior to the filing deadline and attempted to submit the same to prison officials for mailing.  *Id.* at 439.  The Sixth Circuit found "[i]f the prison had accepted and mailed [the petitioner's] petition when he first attempted to deliver it—five days before the state's deadline—we have no doubt that it would have been timely delivered in the normal course of events."  *Id.*  Here, regardless of any delay in the delivery of the Alabama Court of Criminal Appeals' decision to him, Malone still could have timely filed a petition for rehearing of his claims and failed to do so.

is fatal to his defense to the procedural default of his ineffective assistance claim.  *See Murray*, 477 U.S. at 494.

**<u>Regardless, Malone Would Not Be Entitled to Relief Under § 2254(d) on the Merits</u>**

Assuming purely for the sake of argument Malone's ineffective assistance claim is not procedurally defaulted, he would not be entitled to relief on the merits pursuant to § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

**<u>Habeas Review Under § 2254(d)</u>**

"By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)."  *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011).  Those exceptions provide for habeas relief when a state-court merits adjudication

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(d)(1) – (2).  Section 2254 also provides "a determination of a factual issue made by a State court shall be presumed to be correct."  § 2254(e)(1).  "This presumption of correctness applies equally to factual determinations made by state trial and appellate courts."  *Bui v. Haley*, 321 F.3d 1304, 1312 (11th Cir. 2003).  A habeas petitioner bears the burden of rebutting the presumption by clear and convincing evidence.  § 2254(e)(1).

A state court determination is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  A state court

determination is an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The inquiry should focus on whether the state court's application of Supreme Court precedent was *objectively* unreasonable. *Id.* at 409. Furthermore, "an *unreasonable* application of federal law is different form an *incorrect* application of federal law." *Id.* at 410 (emphasis in original). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

Finally, under § 2254(d)(2), a "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "Instead, 'if some fairminded jurists could agree with the state court's decision, although others might disagree,' the state court's decision is not unreasonable. To be unreasonable, the error in the state court's finding must be so clear that there is no possibility for 'fairminded disagreement.'" *Holsey v. Warden, Georgia Diagnostic Prison*, 694 F.3d 1230, 1260 (11th Cir. 2012), *cert. denied*, 133 S. Ct. 2804, (2013) (internal citations omitted).

### *Strickland* Test for Ineffective Assistance

The two-part test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984) governs an ineffective assistance claim. The *Strickland* test applies to a claim of ineffective assistance in the context of the plea process, just as during a criminal trial. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). A petitioner bears the burden of persuasion under this test. *See Chandler v. U.S.*, 218 F.3d 1305, 1313 (11th Cir. 2000). First, a petitioner must show his

counsel's representation "'fell below an objective standard of reasonableness.'"  *Id.* (quoting *Strickland*, 466 U.S. at 687-88).  Second, a petitioner must establish prejudice by showing "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Id.* at 59.  "[F]ailure to establish either deficient performance or prejudice is fatal to a *Strickland* claim . . . ."  *Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1284 (11th Cir. 2012), *cert. denied*, 133 S. Ct. 1625 (2013).

Counsel's performance is assessed "under prevailing professional norms," "considering all the circumstances," and "on the facts of the particular case, viewed as of the time of counsel's conduct."  *Strickland*, 466 U.S. at 689-90.  "Judicial scrutiny of counsel's performance must be highly deferential.  *Id.* at 689.  In fact, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . ."  *Id.*  This presumption is so strong, "[a]n ambiguous or silent record is not sufficient to disprove the strong and continuing presumption [of effective representation].  Therefore, where the record is incomplete or unclear about [counsel's] actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment."  *Grayson v. Thompson*, 257 F.3d 1194, 1218 (11th Cir. 2001) (internal citations omitted).  Furthermore,

> counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial.  To impart such an understanding to the accused, counsel must, after making an independent examination of the facts, circumstances, pleadings and laws involved, offer his informed opinion as to the best course to be followed in protecting the interests of his client.

*Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984) (internal citations omitted).  As for the prejudice prong, "[i]t is not enough for [a petitioner] to show that the errors had some

conceivable effect on the outcome of the proceeding." *Id.* at 693. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

### Interplay of § 2254(d) and *Strickland*

A federal habeas court reviews a *Strickland* claim through the "additional prism of AEDPA deference." *Morris v. Sec'y, Dept. of Corr.*, 677 F.3d 1117, 1126 (11th Cir. 2012).

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different.
>
> . . .
>
> Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 131 S. Ct. at 785, 788. "Section 2254(d)'s 'standard for evaluating state-court rulings' is [] 'highly deferential' and 'difficult to meet.'" *Anderson v. Sec'y, Fla. Dep't of Corr.*, 752 F.3d 881, 902 (11th Cir. 2014) (internal citation omitted). The standard established by *Strickland* is likewise difficult to surmount. *Harrington*, 131 S. Ct. at 788. "Furthermore, " '[e]valuating whether a rule application was unreasonable requires considering the rule's specificity.'" *Harrington*, 131 S. Ct. at 786. "The *Strickland* standard is a general one, so the range of reasonable applications is substantial." *Id.* at 788. In sum, "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* (internal citations omitted).

It also bears noting "AEDPA deference applies to summary dispositions of a state court, because '§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been "adjudicated on the merits"'" *Bishop v. Warden, GDCP*, 726 F.3d 1243, 1255 (11th Cir. 2013) (quoting *Richter*, 131 S. Ct. at 785).  In the case of a summary disposition, "a habeas court must determine what arguments or theories . . . could have supported[] the state court's decision. . . ." *Harrington*, 131 S. Ct. at 786.  But "[where] the state court has denied the petitioner's claim on only one prong of the *Strickland* test . . . we review *de novo* the prong that the state court never reached." *Ferrell v. Hall*, 640 F.3d 1199, 1224 (11th Cir. 2011).

### Application of § 2254(d) and *Strickland* to Malone's Claim

Both the Circuit Court of Madison County and the Alabama Court of Criminal Appeals adjudicated Malone's ineffective assistance claim on the merits.  (Docs. 4-6, 4-7).  The Circuit Court of Madison County found as follows:

1.  The Petition lacks merit.
2.  Petitioner's trial counsel represented Petitioner diligently, professionally, effectively at the trial court level, and Petitioner was not denied effective assistance of counsel.
3.  Petitioner's trial counsel conveyed the terms and conditions of the State's plea agreement to Petitioner and discussed those terms and conditions at length with Petitioner and Petitioner's family.
4.  Petitioner had ample time to discuss the relative merits, costs and benefits of proceeding with a suppression hearing or choosing instead to take the State's plea offer.
5.  At the time of entering his plea of guilty, Petitioner evidenced a full understanding of his options and the consequences thereof.
6.  Petitioner's plea of guilty was knowingly, intelligently, and voluntarily made.
7.  The Petition fails to state a claim upon which relief can be granted.
8.  No purpose would be served by further proceedings in this matter.

(Doc. 4-6).  The court based its findings on Malone's submissions, the State's submissions, the underlying court file, and its own independent recollection of the relevant course of procedural

events in the underlying case.  (*Id.*).  Noting *Strickland* governed Malone's ineffective assistance claim, the Alabama Court of Criminal Appeals found as follows:

> The circuit court, after considering the evidence submitted by the parties, credited trial counsel's affidavit and found that trial counsel represented Malone "diligently, professionally, and effectively" and trial counsel was not constitutionally ineffective.  The circuit court's finding (sic) are supported by trial counsel's affidavit; therefore, this Court cannot say that the circuit court abused its discretion by denying relief.

(Doc. 4-7, pp. 2, 6) (internal citation to record omitted).  The determination of the Alabama Court of Criminal Appeals was not "contrary to" clearly established Supreme Court precedent.[14] There can be no dispute the state court correctly identified the controlling Supreme Court precedent (i.e., *Strickland*).  *See Williams*, 529 U.S. at 391 ("It is past question that the rule set forth in *Strickland* qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'").  The only real question for this court is whether the Alabama Court of Criminal Appeals' decision resulted from an unreasonable determination of the facts in light of the evidence presented to that court or an unreasonable application of *Strickland* to those facts.  *See Brooks v. Comm'r, Alabama Dep't of Corr.*, 719 F.3d 1292, 1300 (11th Cir. 2013), *cert. denied*, 134 S. Ct. 1541 (2014) ("There is no dispute that the Alabama courts correctly identified the relevant Supreme Court law: *Strickland v. Washington*.  Therefore, [the petitioner] must show that the Alabama Court of Criminal Appeals's decision was an unreasonable application of *Strickland*." (internal citation omitted)).  It did not.

In his affidavit attached to his Rule 32 petition, Malone stated his trial counsel told him the motion to suppress lacked merit because a physical copy of the federal arrest warrant had been located.  (Doc. 4-3, p. 26).  Also attached to Malone's Rule 32 petition were the affidavits

---

[14] The federal habeas court "determining whether [it] should overturn the state courts' [sic] rejection of the claim at issue" should "review the highest state court decision disposing of the claim."  *Harvey v. Warden, Union Corr. Inst.*, 629 F.3d 1228, 1237 (11th Cir. 2011).

of Malone's parents stating their general dissatisfaction with the performance of their son's trial

counsel.  (*Id.* at 35-41).  Malone attached additional affidavits sworn to by himself, his mother,

and his father, respectively, to his reply to the State's response to his Rule 32 petition.  In his

affidavit, Malone stated in relevant part as follows:

> C.    Approximately fifteen (15) minutes prior to the beginning of the proceedings on January 26, 2009, I met with Mr. Johnson and Mr. Kittren Walker[15] in a holding cell in the courthouse.  During this meeting, I was informed of the plea offer and the discovery of the federal arrest warrant.  I inquired about the motion to suppress and Mr. Johnson stated that the motion lacked merit due to the discovery of the federal arrest warrant and the Supreme Court's decision in Herring v. United States, 129 S. Ct. 695 (2009).  I asked about the other issues with the search and Mr. Johnson responded, "There are no other issues to raise."  I told Mr. Johnson that I needed more time to absorb the information and consider the plea offer but he replied, "I need an answer by the time we go into the courtroom."

> D.    At the beginning of the trial proceeding, Mr. Johnson requested a brief recess to consider the plea offer.  I was joined by my family in the conference room with Mr. Johnson and Mr. Walker.  I expressed my displeasure with the handling of my case.  I specifically stated that I felt deceived because they—Messrs. Johnson and Walker—led me to believe that the motion to suppress would be argued.  I continued to reject the idea of pleading guilty for several minutes.  I finally yielded to Mr. Johnson's advice after he unequivocally stated that I would lose the motion to suppress and face a far greater sentence than 10 years.

> 4.    That I accepted the plea offer based on Mr. Johnson's assessment of the initial search of my vehicle and subsequent search of my apartment.  If not for Mr. Johnson's erroneous advice, I would have rejected the plea offer and proceeded with the motion to suppress in spite of the State's sentencing recommendations.  I pled guilty based on the futility, according to Mr. Johnson, of the motion to suppress, not the favorable terms of the plea agreement.  I truly believed, based on Mr. Johnson's statements, the search of my vehicle was lawful and that any motion to suppress would be denied.

---

[15] Although Malone appears to have retained both Raymond L. Johnson, Jr. and Kittren Walker in connection with the state court charges, his ineffective assistance claim is based only on his representation by the former.

(Doc. 4-5 at 9-10).  The affidavits of Malone's parents likewise stated Malone's trial counsel told them the motion to suppress lacked merit.  (*Id.* at 12, 14).

Attached to the State's response to Malone's Rule 32 petition was the affidavit of Malone's trial counsel, wherein he stated in relevant part as follows:

4. . . . . The case was first set for trial on June 23, 2008, and finally on January 26, 2009.  The Motion to Suppress was scheduled for argument at the time of trial.  Prior to filing the Motion to Suppress, I spoke extensively with Mr. Cox, the private investigator, regarding the facts that he obtained from possible witnesses that he interviewed.  I also reviewed search and seizure law as it related to the facts to be presented to the Court in this case.

5. Prior to January 26, 2009, I met with Attorney Walker and Mr. Cox and we prepared the case for trial.  On January 26, 2009, I, along with Attorney Kittren Walker and Eddie Cox, Private Investigator, drove to Huntsville and met with the Defendant in advance of trial and advised him of the offer for a plea that was presented to his attorneys by James Tolleson, Assistant District Attorney.  Mr. Tolleson stated, that in exchange for the Defendant pleading Guilty to Trafficking in Marijuana, the State would recommend to the Court that he be sentenced to a term of 10 years; that his imprisonment time would run concurrent with his 10 year federal sentence; that he receive credit for time served; and that the State would move to dismiss all other counts.  Mr. Tolleson stated that the offer would be withdrawn if the Defendant proceeded with a hearing on his Motion to Suppress.  Mr. Tolleson stated that if the Defendant proceeded to trial and was convicted, the State would recommend a consecutive sentence for each conviction, and that his State sentence run consecutive to his 2008 federal conspiracy sentence of 120 months.  Both of the Defendant's attorneys spoke with the Defendant for several hours about the strengths and weaknesses of his case.  It was also explained to the Defendant that we were prepared for trial; however, if he proceeded to trial, and if he were found guilty of the charges, then he would face a sentence of 10 to 99 years on Trafficking – Marijuana (Class A Felony); and 2 to 20 years on the Theft of Property – First Degree (Class B Felony).  It was also explained to the Defendant that if he were found guilty of both charges, the Court could agree with the prosecutor and impose a consecutive sentence.  In addition, it was explained to the Defendant that the Court could impose his sentence so that he would not begin to serve his State imprisonment sentence until he satisfied his federal imprisonment sentence.  At the Defendant's request, Thomas Lee Malone and Marie Malone (his parents) and several other relatives were brought into a room with the Defendant and his attorneys and offer and plea details

were openly discussed.  During the meeting with family members, the Defendant's parents felt that it was in the Defendant's best interest to accept the State's offer.

6.      After several hours of intense discussion, the Defendant agreed to accept the State's offer.  The Defendant felt that accepting an offer that would cause the State to recommend to the Court a sentence of 10 years that would run concurrent with his federal sentence was much better than him receiving a State sentence that would not begin to run until after he served his federal imprisonment sentence.  Defendant knew that he had to waive/withdraw his Motion to Suppress if he wanted to accept the offer; and he felt that the risk of proceeding to trial and being found guilty was far more severe than waiving/withdrawing his motion to suppress.  Therefore, the Defendant knowingly, willingly and voluntarily agreed not to proceed with his Motion to Suppress and accept the plea offer.  The transcript of his plea will show that his plea was knowingly, intelligently and voluntarily given.[16]

(Doc. 4-4 at 3-5).

All that was required of Malone's trial counsel was that he provide Malone with an understanding of the law in relation to the facts and offer an informed opinion as to the best course of action to pursue.  *See Wofford*, 748 F.2d at 1508.  The Supreme Court has observed the decision to plead guilty before the evidence is in often rests on counsel's good-faith evaluation of the State's case, including the admissibility of evidence, and that such evaluation may not withstand retrospective examination in a post-conviction proceeding does not necessarily render counsel's assistance so deficient as to undo the intelligence of a defendant's guilty plea:

[T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court. If proved, would those facts convince a judge or jury of the defendant's guilt? On those facts would evidence seized without a warrant be admissible? Would the trier of fact on those facts find a confession voluntary and admissible? Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be.

---

[16] This court was not provided with any transcript of Malone's plea colloquy.

Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.

That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing. Courts continue to have serious differences among themselves on the admissibility of evidence, both with respect to the proper standard by which the facts are to be judged and with respect to the application of that standard to particular facts. That this Court might hold a defendant's confession inadmissible in evidence, possibly by a divided vote, hardly justifies a conclusion that the defendant's attorney was incompetent or ineffective when he thought the admissibility of the confession sufficiently probable to advise a plea of guilty.

In our view a defendant's plea of guilty based on reasonably competent advice is an intelligent plea not open to attack on the ground that counsel may have misjudged the admissibility of the defendant's confession. Whether a plea of guilty is unintelligent and therefore vulnerable when motivated by a confession erroneously thought admissible in evidence depends as an initial matter, not on whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in criminal cases.

*McMann v. Richardson*, 397 U.S. 759, 769-71 (1970).

The affidavit of Malone's trial counsel submitted by the State in response to Malone's Rule 32 petition supports the conclusion he discharged his obligation to Malone during the plea process.  According to Malone's trial counsel, after a review of the law of search and seizure as it related to the facts of Malone's case and in light of the plea offer made by the State, he discussed "the strengths and weaknesses of [Malone's] case" with Malone "for several hours."  Although the affidavits submitted by Malone and his parents to the Alabama state courts contradict this version of events, suggesting Malone's decision to plead guilty was made under pressure in a small amount of time on the unequivocal advice of his trial counsel that the motion to success would, no doubt, fail, such contradictory evidence does not demonstrate the Alabama Circuit Court of Appeal's decision was based on an unreasonable determination of the facts.  The Circuit Court of Madison County credited the affidavit submitted by Malone's trial counsel over those of

Malone and his parents.  The Alabama Court of Criminal Appeals affirmed the circuit court's decision on the grounds the affidavit submitted by Malone's trial counsel supported that decision.  This court has found "not all reasonable jurists would agree that a credibility choice between contradicting affidavits, made without the benefit of oral testimony, was 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  *Landers v. Mitchem*, 2013 WL 1282131, at *3 (N.D. Ala. March 27, 2013); *see also* Ala. R. Crim. P. 32.9 ("The court in its discretion may take evidence by affidavits, written interrogatories, or depositions, in lieu of an evidentiary hearing, in which event the presence of the petitioner is not required . . . .").  Nor can we say the Alabama Court of Criminal Appeals unreasonably applied *Strickland* to the facts it accepted as true.  Again, the affidavit of Malone's trial counsel supports the conclusion he discussed with Malone the relative merits of accepting the plea offer versus proceeding with the hearing on the motion to suppress and to trial.  This is what was required of him.  *See Wofford*, 748 F.2d at 1508.

Furthermore, accepting as true Malone's allegation his trial counsel advised him the viability of the motion to suppress was undercut by discovery of the federal arrest warrant, such advice was not professionally unreasonable.  Nor would it have been professionally unreasonable for Malone's trial counsel to conclude the arguments for suppression of certain evidence to which Malone allegedly alerted him lacked merit or, at least, were not meritorious enough to reject the State's plea offer.  In his Rule 32 Petition, Malone claimed the bag containing marijuana residue was seized in violation of the Fourth Amendment because it was found in the trunk of his car, not in the passenger compartment, and he told his trial counsel as much.  (Doc. 4-3 at 15).  This argument was premised on the assumption a court would have credited Malone's testimony—that is, the testimony of a convicted felon charged with stealing a patrol

car and fleeing the scene of his arrest—regarding the location of the bag.  Malone claimed he also told his trial counsel there were witnesses to the discovery of the bag in the trunk of his vehicle, including the mother of Malone's child.  (*Id.*).  In his affidavit, Malone's trial counsel stated he undertook an investigation of the facts surrounding Malone's case (Doc. 4-4 at 4), and he could have reasonably concluded a court was more likely to credit the testimony of the law enforcement officials who conducted the search of Malone's vehicle over that of bystanders, and particularly over the testimony of the mother of Malone's child, who was also arrested for trafficking in marijuana after the search of Malone's residence where she also appeared to reside. (*See* Doc. 4-3 at 28).

Malone also argued in his Rule 32 petition the affidavit supporting the search warrant for his residence contained a number of intentional or reckless false statements and omissions that invalidated the search warrant under *Franks v. Delaware*, 438 U.S. 154, 171 (1978).  (Doc. 4-3 at 18-22).  As to each alleged misrepresentation and/or its intentionality, Malone either offered a conclusory statement or merely speculated.  Malone claimed, simply, the bag did not contain marijuana residue.  (*Id.* at 20).  For the reasons discussed in the immediately foregoing paragraph, it would have been reasonable to conclude a court would not credit Malone's unsupported, self-serving assertion over a statement contained in a document sworn to by an officer of the law.  Furthermore, even if the statement that the bag contained marijuana residue was false, Malone offered no evidence the statement was made intentionally or recklessly. Likewise, Malone offered no evidence to support his claim that the statement the federal charges against him encompassed "trafficking in marijuana" was made intentionally or recklessly.  Nor did Malone offer any evidence the omission of the precise location of the bag discovered in his vehicle was made intentionally or recklessly.  Finally, Malone claimed the affidavit omitted the

23

affiant's involvement in a prior federal investigation of him.  (*Id.* at 21-22).  More specifically, Malone appeared to allege the affiant's generalizations made on the basis of his training and experience to the effect drug traffickers conceal controlled substances in their residences were refuted by a prior search of Malone's residence that yielded "[n]o controlled substances, large amounts of currency, paraphernalia, or records. . . ."  (*Id.*).  Not only did Malone offer no evidence such alleged omission was intentional or reckless, he gave no explanation why any such omission would have been so material as to affect the validity of the search warrant.  In sum, it would have been professionally reasonable to conclude Malone could not make the requisite showing under *Franks* to suppress evidence seized pursuant to the search.  *See United States v. Novaton*, 271 F.3d 968, 986-87 (11th Cir. 2001) (entitlement to relief under *Franks* requires showing (1) alleged misrepresentations or omissions were knowingly or recklessly made, and (2) result of excluding alleged misrepresentation and including alleged omissions would have been lack of probable cause for issuance of warrants).  This is especially true in light of the presumption of validity that attaches to an affidavit supporting a search warrant.  *See Franks*, 438 U.S. at 171.

In the alternative to his argument that the bag containing marijuana residue was found in the trunk of his vehicle, Malone argued even if it was found in the passenger compartment, it was seized illegally under *Arizona v. Gant*, 556 U.S. 332 (2009).  (Doc. 4-3 at 15-18).  In *Gant*, the Supreme Court held police officers are authorized to "search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search," or "when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'"  *Id.* at 343.  But *Gant* was not the law when the search of Malone's vehicle was conducted.  At the time of such search, the law was

clear it was permissible to search a vehicle incident to a recent occupant's arrest regardless of the occupant's ability to access the passenger compartment.  *U.S. v. Lebowitz*, 676 F.3d 1000, 1010 (11th Cir. 2012), *cert. denied*, 133 S. Ct. 1492 (2013).  Furthermore, "the good-faith exception to the exclusionary rule applies to a police officer's reliance on binding Circuit precedent."  *Id.*

Given our conclusion it would not have been professionally unreasonable for Malone's trial counsel to have found suppression of evidence in the state case unlikely, it would not have been unreasonable for the Alabama state courts to conclude the same.

It is not entirely clear whether the Alabama state courts addressed *Strickland's* prejudice prong or disposed of Malone's ineffective assistance claim solely on the deficient performance prong.  *See Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1284 (A court "need not address both *Strickland* prongs if the petitioner fails to satisfy either one of them.").  Whether those courts addressed the prejudice prong affects our standard of review.  See *Ferrell*, 640 F.3d at 1224 (applying AEDPA deference to *Strickland* prong addressed by state court and *de novo* standard of review to Strickland prong not addressed by state court).  Even under a *de novo* standard of review, Malone's prejudice argument fails.  Malone's unadorned assertion he "pled guilty based on the futility, according to [his trial counsel], of the motion to suppress, not the favorable terms of the plea agreement" and "would have [otherwise] rejected the plea offer and proceeded with the motion to suppress in spite of the State's sentencing recommendations," (Doc. 4-5 at 10), is conclusory.  *See Diaz v. United States*, 930 F. 2d 832, 835 (11th Cir. 1991) (defendant's conclusory statements regarding his desire to plead guilty made with the benefit of hindsight did not constitute a "reasonable probability").  It is also unconvincing given (1) the success of the motion to suppression was, at best, uncertain at the time Malone accepted the State's plea offer and (2) the favorability of the State's offer to recommend Malone's state sentence of ten years

run concurrent with (as opposed to consecutive to) the ten-year federal sentence he was already serving and to dismiss all of the other charges against him, including those that had nothing to do with the search of his vehicle or residence (i.e., theft of a patrol car, escape, and resisting arrest).

### Malone Is Not Entitled to an Evidentiary Hearing

In his reply to the State's response to his § 2254 petition, Malone requests an evidentiary hearing pursuant to § 2254(e)(2). This court has determined Malone's first two grounds for relief are not cognizable under § 2254 and his third is procedurally defaulted. Therefore, "the issue of factual development is moot." *See Kelley v. Secretary for Dep't of Corrections*, 377 F.3d 1317, 1342 (11th Cir. 2004). Even if Malone's ineffective assistance claim was not procedurally defaulted, he would not be entitled to an evidentiary hearing. A petitioner is not entitled to an evidentiary hearing under § 2254(e)(2) unless a federal habeas court first concludes the state courts' merits determination resulted in a decision based on an unreasonable determination of the facts in light of the evidence or an unreasonable application of Supreme Court precedent to those facts. *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) ("[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.");[17] *see also Landers*, 2013 WL 1282131, at *4 (denying § 2254 petition alleging ineffective assistance in context of plea process without evidentiary hearing).

### Conclusion

For the foregoing reasons, Malone's § 2254 petition is due to be and is hereby **DENIED** and **DISMISSED WITH PREJUDICE**. A final judgment will be entered contemporaneously herewith.

---

[17] The text of § 2254(d)(2) makes clear review under that provision is similarly limited to "the evidence presented in the State court proceeding." *See id.* at 1400 n.7.

Finally, pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the court must issue or deny a certificate of appealability.  A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing, a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Lennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or "the issues presented were 'adequate to deserve encouragement to proceed further,'" *Miller-El v.  Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).  Malone has failed to make the requisite showing.  Therefore, a certificate of appealability is **DENIED**.

**DONE** this 4th day of September, 2014.

**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**